588 A.2d 1323

## LAFAYETTE COLLEGE

v.

## ZONING HEARING BOARD OF the CITY OF EASTON, et al.

### Spiros P. STAMUS and Athena Stamus, husband and wife

v.

## ZONING HEARING BOARD OF the CITY OF EASTON.

### Appeal of Spiros P. STAMUS and Athena Stamus, husband and wife.

Commonwealth Court of Pennsylvania.

Argued Oct. 29, 1990.

Decided March 28, 1991.

Theodore R. Lewis, Lewis and Walters, Easton, for appellants.

Daniel E. Cohen, Laub, Seidel, Cohen & Hof, Easton, for appellee.

Before PALLADINO and McGINLEY, JJ., and CRUMLISH, Jr., Senior Judge.

McGINLEY, Judge.

Spiros P. Stamus and Athena Stamus (Appellants) appeal from an order of the Court of Common Pleas of Northampton County (trial court) which granted a special exception in favor of Lafayette College (Lafayette). We reverse.

Lafayette is the owner of the property known as 426 Clinton Terrace, which is located at the corner of Clinton Terrace and Cattell Street. The lot has 120 feet of frontage on Clinton Terrace and 135 feet of frontage on Cattell Street. On the lot is a single family structure, fronting on Clinton Terrace, which the College desires to convert into "rooming units."

This matter is before this court for a second time. In 1986 Lafayette applied to the City of Easton (Easton) for a special exception to facilitate the use of the single family dwelling as a residence facility for 13 students. The structure is located in an R–LD (residential—low density) district. The application was denied by Easton's zoning officer because the proposed use was not permitted in an R–L District. Easton's Zoning Hearing Board (ZHB) conducted a hearing at which counsel for Lafayette argued that the proposed use was for "rooming units," and that under Easton's zoning ordinance (ordinance) such a use qualifies as a special exception. The ZHB denied the application without addressing the special exception issue. On appeal the trial court remanded to the ZHB for a determination regarding whether the proposed use qualified as a special exception. The ZHB denied the application and both Lafayette and the Appellants appealed to the trial court which reversed the decision of the ZHB and granted the special exception.

On the previous appeal we found that the trial court granted the special exception without actually calculating the square footage required by the zoning ordinance for the proposed parking plan. We vacated and remanded for the trial court to consider that issue:

> Therefore, a material factual and legal issue exists which must be resolved before a determination can be made as to whether the college has satisfied all the requirements entitling them to a special exception. When a lower court fails to determine material issues in a case, the matter must be remanded by an appellate court for a determination of such issues. (citation omitted.)

*Lafayette College v. Zoning Hearing Board of the City of Easton* [—— Pa.Cmwlth. ——, 556 A.2d 550 (table) ] (1989).

On remand, the trial court heard additional evidence and considered only the parking issues.[1] The trial court found that the on-site parking plan did not comport with the applicable yard requirements of the ordinance and stated:

> In the case before us, the problem arising with parking space # 6 can easily be solved by the imposition of a condition that it be relocated off-site. It is accordingly our duty to grant the special exception with the imposition of such condition rather than to deny the special exception outright. Zumas, 40 North.Co.Rep. at 33 (citing Sibley v. Plymouth Twp., 92 Mont.Co.L.R. 33 (1969)).

Trial court opinion at 9.[2] The trial court also recognized that the off-site parking spaces did not comply with the ordinance:

> [T]he proposed parking spaces are positioned five feet from the lot line. As indicated *supra*, the proposed parking spaces overlap into the required side yard by one foot. Technically, this violates the zoning ordinance. However, the violation is inconsequential and can easily be rectified. Since this issue is before us de novo, we are sitting in the place of the Zoning Hearing Board. Thus, we order Lafayette to reposition the two off-site parking spaces in accordance with this side yard requirement.

Trial Court's Opinion at 11.[3] The trial court reinstated its earlier order and added the above-quoted conditions to the grant of the special exception.

1. None of the parties has objected to the procedure followed by the trial court on remand.

2. The ordinance prohibits parking spaces within the required yards:
1371.12 MINIMUM SETBACKS.
(a) Parking ... spaces for one or more vehicles located on the same lot with a principal building or use shall not be located within the required front yard or, if a corner lot, within the required side yard adjacent to the side street.

3. In regard to off-site parking spaces the ordinance provides at Section 1371.12(b):

Presently on appeal Appellants argue that all of the conditions required for a special exception have not been met; that the proposed parking plan is unsafe, inadequate and in contravention of the ordinance; that the proposed use of the property for "rooming units" does not comply with the ordinance insofar as the proposed use is actually for a dormitory; and that the proposed use will have an adverse effect on the surrounding residential area.

■ When, as here, a trial court receives additional testimony, makes findings of fact and conclusions of law and decides the case *de novo*, our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Omiridis v. Zoning Hearing Board of the City of Chester*, 110 Pa.Commonwealth Ct. 247, 531 A.2d 1196 (1987).

■ A special exception is a conditionally permitted use, legislatively allowed where specific standards and conditions detailed in the ordinance are met. *Bray v. Zoning Board of Adjustment*, 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1980). Section 1309.26 of the ordinance provides that:

An exception to the provisions of the Zoning Code may be granted for the conversion of an existing dwelling in any R district so that additional rooming units are contained therein, provided that height and yard requirements are not violated, that for each such unit added the lot area requirements shall be increased by 1,000 square feet and one off-street parking space shall be provided for each additional unit.[4]

(b) Parking ... spaces for one or more vehicles not on the same lot as the principal building or use shall not be located closer to any street lot line than the depth or width of yard which is required for a principal building in the zoning district in which it is located.

4. The trial court also recognized that the ordinance specifies the following at Section 133.06:
133.06 MINIMUM YARD SIZE REQUIREMENTS (R-LD) [For buildings over 2½ stories tall, the minimum yard size requirements are: front yard—25 feet; rear yard—35 feet; side yard—8 feet; total of both side yards—18 + 2 feet for each foot over 35 feet height.]

The Municipalities Planning Code (MPC), at Section 912.1, recognizes that zoning hearing boards may impose conditions on the grant of a special exception:

> Where the governing body, in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria. In granting a special exception, the board may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance.

53 P.S. 10912.1.

In *Application Of Good Fellowship Ambulance Club*, 406 Pa. 465, 178 A.2d 578 (1962), the Supreme Court held that the ordinance authorized a special exception for an ambulance garage and on remand *directed the zoning board to impose conditions*, that would bear a "substantial" relation to the health and safety, on the number of ambulances to be housed in the building (emphasis added). In *Lower Merion Township v. Enokay, Inc.*, 427 Pa. 128, 233 A.2d 883 (1967), the grant of a special exception for a place of public assembly was approved where the court of common pleas computed the square footage of the relevant assembly areas and the required number of parking spaces, excluding areas that were not places of assembly. Enokay, Inc. had submitted a proposal providing for 475 spaces. The court of common pleas calculated that 440 spaces were required and concluded that the proposal complied with the requirements of the ordinance.

A court's power to impose conditions is not unlimited. This court has disapproved of a trial court's reversal of a zoning board denial of an application for a special exception where the trial court imposed its own conditions on the grant of a special exception. In *Derr Flooring Company, Inc. v. Whitemarsh Township Zoning Board*, 4 Pa.Commonwealth Ct. 341, 285 A.2d 538 (1972), we held that a court of common pleas' limitations on a business, approved

as a special exception, were inappropriate. The court went beyond the power to "modify" a decision of a zoning hearing board, as provided by the Pennsylvania Municipalities Planning Code,[5] when it limited the hours of loading, unloading and operating. In *Derr*, the zoning board denied the special exception; therefore, the trial court had nothing before it to modify. *Id.*, 4 Pa.Commonwealth Ct. at 349, 285 A.2d at 543. We directed a remand to the zoning board, reasoning that, "it is the local zoning officials who have the knowledge of local circumstances who should establish the conditions to be applied to special exceptions." *Id.* (citing *Limekiln Golf Course, Inc. v. Zoning Board of Adjustment of Horsham Township*, 1 Pa.Commonwealth Ct. 499, 275 A.2d 896 (1971)).

In *Appeal of Baird*, 113 Pa.Commonwealth Ct. 637, 537 A.2d 976 (1988), a property owner appealed the denial of a special exception to use his property as a commercial dog kennel where the property was located in a residential district. A dog kennel was a permitted use in the district by special exception. The property owner submitted plans that failed to comply with the dimensional requirements applicable to buildings, but offered to do all that was necessary to come into compliance. The trial court reversed the denial, reasoning that the zoning board should have approved the application under the condition that the proposed use be established in full compliance with the ordinance. On appeal, we reversed (citing our previous decision in *Hopkins v. Chalfont Borough Zoning Hearing Board*, 36 Pa.Commonwealth Ct. 526, 388 A.2d 764 (1978)) noting:

> In effect, the appellant asserts that the Board cannot simply reject an application for special exception as being too broad but rather that it must rewrite the application via the imposition of conditions in order to conform it to the requirements of the ordinance. We can find no authority imposing such a duty upon a zoning hearing

5. The court was referring to former Section 1009 of the MPC. In 1988, the MPC was revised, and appeals to common pleas court from decisions of zoning boards are now governed by Sections 1001–A—1006–A of the MPC, 53 P.S. §§ 11001–A—11006–A.

board. Moreover, the proper function of a condition imposed upon a special exception is to reduce the adverse impact of a use *allowed* under special exception ... *not* to enable the applicant to meet his burden of showing that the use which he seeks is one allowed by special exception.

*Baird,* 113 Pa.Commonwealth Ct. at 641, 537 A.2d at 977–978 (emphasis in original).

An applicant for a special exception has the burden of proving that the request complies with the objective requirements of the zoning ordinance. *Birmingham Township v. Chadds Ford Tavern, Inc.,* 132 Pa.Commonwealth Ct. 312, 572 A.2d 855 (1990). Failure to provide parking as required by the ordinance provides a sufficient basis for the denial of a special exception. *In Re Appeal of Zambrano Corp.,* 49 Pa.Commonwealth Ct. 6, 410 A.2d 1293 (1980). Lafayette has not submitted a parking proposal that complies with the specific requirements of the ordinance. The trial court has exceeded its authority by modifying the plan, and has approved a plan not submitted by Lafayette. Further, even with the imposed conditions the plan still is not in compliance with the parking requirements of the ordinance. The trial court acknowledges in its opinion that the two off-site parking spaces in the submitted plan do not comply with the ordinance's side yard requirement. Nonetheless, the trial court presumes that, because the two proposed off-site parking spaces are to be situated on a vacant lot, Lafayette's plans can be revised to comply with the requirements of the ordinance and also accommodate a third space, thereby alleviating the violation of a proposed on-site parking space.

Appellants also maintain that moving another space off site does not solve the problem of maneuverability and that the lot is still unsafe because of the manner that the automobiles must exit. The trial court, in addressing egress from the property, concluded that the proposed exit had been in existence for thirty years and had been safe and should remain so. Section 1371.045 of the ordinance addresses the size of parking spaces and maneuverability:

1371.045 SIZE OF PARKING SPACE. All parking spaces shall be of a size no less than nine feet deep, not including maneuvering space, whether inside or outside of a structure, for the purpose of long or short term standing of automotive vehicles, to be used exclusively as a parking stall for one automotive vehicle.

The proposal as submitted to the trial court does not specify what areas would be used for maneuvering. The trial court made no specific finding concerning maneuvering except to suggest that the lawn be used. Again, the standard to be observed in these cases is whether the plan as submitted complies. *Baird*. The trial court's suggestion that a portion of the lawn be used for the maneuvering of automobiles is equivalent to another alteration of the submitted parking plan.

The order of the trial court is reversed.

## ORDER

AND NOW, this 28th day of March, 1991, the order of the Court of Common Pleas of Northampton County in the above-captioned case is hereby reversed.